UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY R. TENHARMSEL,

No. 13-13078

Plaintiff,

District Judge Terrence G. Berg

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____ /

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.   Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #10] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #8].

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on November 18, 2009, alleging disability as of January 29, 2009 (Tr. 131).  Upon initial denial of the claim, Plaintiff requested an administrative

-1-

hearing, held on November 23, 2011 in Grand Rapids, Michigan before Administrative Law Judge ("ALJ") James F. Prothro (Tr. 31).  Plaintiff, represented by attorney Daniel Pollard, testified, as did vocational expert ("VE") David Holwerda  (Tr. 39-71).  On December 22, 2011, ALJ Prothro found Plaintiff not disabled (Tr. 27).

On May 14, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3).  Plaintiff filed suit in this Court on July 17, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born February 16, 1962,  was 49 at the time of administrative decision (Tr. 27, 131).  He completed high school and a die maker apprenticeship (Tr. 168).  He worked previously as a die maker (Tr. 164).  He alleges disability as a result of a right shoulder rotator cuff tear (Tr. 163).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived with his wife and three children, ages 17, 16, and 12 (Tr. 39).  He took college classes toward a bachelor's degree in computer sciences (Tr. 40).  He was currently finishing his third year of classes and had approximately 11 credits to complete before finishing the degree (Tr. 40).  Plaintiff was not working full time, but received a small stipend from his position as a city commissioner in Hudsonville, Michigan (Tr. 42).

Plaintiff's right rotator cuff injuries were sustained in a workplace fall in May, 2009 (Tr. 49).  He continued to work until the condition was properly diagnosed in October, 2008

-2-

(Tr. 52). He underwent surgery for the shoulder repair in January, 2009 (Tr. 49). Following the surgery, his surgeon told him that the procedure had been unsuccessful due to tissue atrophy (Tr. 53). He underwent physical therapy following surgery, but was told that in the future, he could require a total shoulder replacement (Tr. 55-56). Following surgery, his employer informed him that no jobs were available with his restrictions (Tr. 56). In the spring of 2009, his employer asked him to come back to work to help dismantle the now defunct plant, but told him that his 20-pound lifting restriction would preclude all available jobs (Tr 57).

In response to questioning by his counsel, Plaintiff reported that he did not take pain medication (Tr. 59). He acknowledged that he was currently overweight, attributing the weight gain to the stress of enrolling in college (Tr. 59-60). He was right-handed, but had learned to "compensate" with the left arm since surgery (Tr. 60). He was able to overhead reach on the right for light objects, but lacked the strength to reach and lift heavy ones (Tr. 61). He drove at least three days a week (Tr. 62). His former knee problems had resolved (Tr. 62).

## B. Medical Records

### 1. Treating Sources

In May, 2008, Plaintiff sought emergency treatment after sustaining shoulder injuries in a workplace fall (Tr. 210, 214, 264). Imaging studies were negative for fractures (Tr. 215,

248).  A chest x-ray was also negative for abnormalities (Tr. 247).  In October, 2008, Plaintiff reported to his employer's medical staff that he required physical therapy (Tr. 268). The same month, an MRI of the right shoulder showed a "large, full thickness" rotator cuff tear (Tr. 210, 246).

In January, 2009, Plaintiff underwent a procedure to repair the rotator cuff (Tr. 220). The procedure was performed without complications, but resulted in a diagnosis by surgeon Thomas M. Matelic, M.D. of "irreparable rotator cuff tear" (Tr. 220, 249, 315).  The following month, Dr. Matelic recommended "range of motion and gentle stretching exercises" (Tr. 254).  April, 2009 imaging studies of the left knee showed "[v]ery minor hypertrophic changes" but no other abnormalities (Tr. 222).  The same month, an x-ray of the left knee showed "mild degenerative change of the left knee" (Tr. 243).   The same month, Dr. Matelic observed an "excellent range" of shoulder motion (Tr. 252, 287, 320). Plaintiff reported that he was "doing well" in regard to pain (Tr. 252).   Consistent with restrictions imposed the previous month, Dr. Matelic signed a "return to work" note stating that Plaintiff was precluded from lifting over 20 pounds and "over chest work" (Tr. 292-293, 324-325).

In October, 2009, Dr. Matelic noted Plaintiff's report that the shoulder was "doing fine" (Tr. 251, 286).  Plaintiff noted that he was unable to "do anything . . .  overhead or away from his body," but had "no real pain with everyday activities" (Tr. 251).  Dr. Matelic restated that Plaintiff had a 20-pound weight restriction (Tr. 251).

-4-

In October, 2010, Dr. Matelic noted "good strength" and range of motion, but opined that the shoulder condition would not get better and "slowly over time will get worse" (Tr. 311, 322, 332). He encouraged Plaintiff to continue home exercises (Tr. 311). In October, 2011, Dr. Matelic noted Plaintiff's report of difficulty "using his hand overhead or sleeping on [the right] side" (Tr. 329). Plaintiff exhibited a full range of shoulder motion and denied pain (Tr. 329). Dr. Matelic encouraged Plaintiff to continue with his home exercise program (Tr. 331). The following month, Dr. Matelic completed a medical source statement finding that Plaintiff could lift up to 20 pounds on an occasional or frequent basis, but was precluded from "over chest work" (Tr. 333).

## 2. A Non-Treating Source

In February, 2010, Angela Maichele completed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; walk, stand, or sit for six hours in an eight-hour workday; and push or pull without limitation in the lower extremities (Tr. 300). Maichele found that Plaintiff was precluded from all overhead lifting and pushing or pulling with the right arm (Tr. 300, 302). As to postural limitations, Plaintiff was restricted to frequent balancing, stooping, kneeling, and crouching; limited to occasional stair climbing; and precluded from climbing ladders, ropes, or scaffolds (Tr. 301). Maichele noted that the rotator cuff limitations did not prevent Plaintiff from taking classes, cooking, cleaning,

driving, and shopping (Tr. 304).

## C. Vocational Testimony

VE David Holwerda characterized Plaintiff's former work as a tool and die-maker/repairer as skilled at the medium exertional level[1] (Tr. 43). He testified that the skills used in the die-maker positions were not transferrable to any exertionally light or sedentary jobs (Tr. 46-47). The ALJ described a hypothetical individual of Plaintiff's age, education, and work experience:

> [L]ight exertional work; is lifting up to 20 pounds occasionally and 10 pounds frequently; standing and/or walking for six hours in an eight-hour period and sitting for up to six hours; this person may not use the right upper extremity for any pushing or pulling; he may not climb ladders, ropes, or scaffolds; can occasionally climb ramps and stirs and occasionally crawl; he can frequently balance, frequently stoop, kneel, and crouch; and with a right upper extremity may not reach over chest level. [With] these limitations, could this person do the past work? (Tr. 65).

The VE responded that the limitations would preclude Plaintiff's past relevant work but would allow the above-described individual to perform the unskilled, exertionally light work of a cashier (30,000 positions in the State of Michigan); counter clerk (3,200); and

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

counter attendant (5,200) (Tr. 65-66). The VE testified that if the same individual were limited to 20 pounds lifting and "no over-chest-work," the job numbers would remain unchanged (Tr. 66 ). The VE testified that if the restrictions were amended to include a sit/stand option, if would allow for the unskilled skilled light work of a cashier (1,500 to 2,000); assembler production worker (1,000 to 1,250); machine operator tender (1,750); and hand packager (1,300) (Tr. 67). The VE stated if the individual were additionally restricted by the inability to lift more than 10 pounds, he would be capable of performing approximately 50,000 light, unskilled positions in the state economy (Tr. 68). In response to Plaintiff's counsel, the VE stated that the need to be "off-task" for 20 percent or more of workday would preclude all gainful employment (Tr. 69).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments "right rotator cuff tear with resultant weakness of the right upper extremity and obesity" but determined that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22-23). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [C]laimant . . . cannot lift more than 20 pounds occasionally and 10 pounds frequently; he cannot sit for more than a total of six hours in an eight-hour workday; he cannot stand and/or walk for more than a total of six hours in an eight-hour workday; he cannot use the right upper extremity to reach or lift/carry objects overhead; he cannot climb ladders, ropes, or scaffolds; he cannot crawl or climb stairs/ramps more than occasionally; and he cannot

-7-

balance, stoop, kneel, or crouch more than frequently  (Tr. 23).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his

past relevant work, he could work as a cashier, counter clerk, and counter attendant (Tr. 26-

27).

The ALJ supported his findings by citing Dr. Matelic's April, 2009 treating notes

showing an excellent range of right shoulder motion (Tr. 25).  The ALJ noted that Plaintiff

denied pain in the course of his daily activities (Tr. 25).  The ALJ also cited Plaintiff's

current ability to maintain his home, perform light household chores, help his children

complete their homework, attend college courses three times a week, and hold the position

of city commissioner in support of his determination (Tr. 24).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of

Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more

than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential

and  "presupposes that there is a 'zone of choice' within which decision makers can go either

way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6ᵗʰ Cir.

1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

-9-

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff argues that the limitations posed to the ALJ did not reflect "the medical records and opinions of evidence." *Plaintiff's Brief* , 10-12, *Docket #8.*  Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)*,* he contends that the finding that he was capable of a range of unskilled, light work is not supported by substantial evidence. *Id.* at 7-8.   Plaintiff also appears to fault the ALJ the for failing to adopt the findings of Dr. Matelic, an orthopedic surgeon.  *Id.* at 8-9.

Plaintiff is correct that vocational testimony given in response to an incomplete hypothetical question does not constitute substantial evidence. *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir.1987);  *Felisky, supra.*   However, he has failed to provide any factual basis to support the argument for  remand.   He asserts that the  finding that he could work as a cashier, counter clerk, and counter attendant is inconsistent with the rotator cuff damage.  *Plaintiff's Brief* at 9.  Yet, the hypothetical question  (limiting him to no reaching over chest level and lifting requirements of no more than 20 pounds occasionally and 10 frequently) actually imposes greater limitations than Dr. Matelic's restrictions allowing lifting of 20 pounds on an occasional *and* frequent basis (Tr. 65, 333).   Moreover, Plaintiff himself testified that he was capable of the overhead reaching of light objects (Tr. 61).

The contention by Plaintiff's counsel that his client testified that "he was not able to use his right upper extremity due to pain" is flatly contradicted by Plaintiff's testimony  that

he did not take pain medication and treating records stating that he did not experience shoulder pain (Tr. 59, 251-252). While Plaintiff's counsel cites three hearing transcript pages purportedly stating that Plaintiff testified that he experienced ongoing pain, *Plaintiff's Brief* at 9 (citing Tr. 55, 56, 57), these portions of the transcript do not contain any mention of pain or discomfort as a result of the shoulder condition. While Plaintiff reported that he experienced significant pain prior to undergoing the procedure to repair the torn rotator cuff, records created three months after surgery and going forward indicate that Plaintiff did not experience shoulder discomfort (Tr. 252). Dr. Matelic's finding that Plaintiff was capable of exertionally light work (Tr. 293) as of March, 2009 (10 months after the May, 2008 workplace injury) also defeats the possibility that he would be entitled to benefits for a "closed period" exceeding of 12 months or longer. 42 U.S.C. §423(d)(1)(A).

Plaintiff's remaining scattershot assertions of error do not provide grounds for remand. While he points out that he "faces the possibility of a total right arthroplasty," such a procedure had not been performed or even contemplated for the near future at the time of the ALJ's decision. If Plaintiff's condition has deteriorated since the administrative decision, his remedy would be to file a new application for benefits. *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 712 (6th Cir.1988). Plaintiff's bald assertion that the jobs of cashier, counter clerk, or counter attendant would require the continuous use of the right upper extremity stands at odds with the VE's testimony that those positions would not require any reaching, lifting, or carrying over chest level with the right arm (Tr. 65). While

Plaintiff's brief contains a long recitation of case law related to the deference accorded to a treating physician's opinion, he does not point to any errors in the ALJ's discussion of Dr. Matelic's assessments.  To the contrary, the hypothetical question to the VE and the RFC found in the administrative decision (restricting Plaintiff to lifting 10 pounds on a frequent basis) is actually more restrictive than Dr. Matelic's finding that Plaintiff could lift 20 frequently (Tr. 333).

In closing, my recommendation to uphold the Commissioner's decision on this application is not intended to trivialize the consequences of Plaintiff's workplace injury or ongoing limitations.  Plaintiff's candid and unexaggerated testimony regarding his residual abilities,  coupled with his current pursuit of a bachelor's degree,  are to be commended.  My criticisms regarding the summary judgment motion are directed exclusively to his attorney. It should also be noted that my own *sua sponte* review of the transcript has not revealed grounds for remand.   The ALJ's determination that Plaintiff was not disabled,  well within the "zone of choice" accorded to the fact-finder at the administrative hearing level,  and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.


## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #10] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #8].

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 11, 2014

-13-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on August 11, 2014, electronically and/or by U.S. mail.

<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen

-14-